RANDY S. GROSSMAN
United States Attorney
KYLE B. MARTIN
Assistant United States Attorney
California Bar No. 267013
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7726

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. **16CR1996-01-WQH** |
|---|---|
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| vs. | |
| ANGEL DOMINGUEZ RAMIREZ (1), | |
| Defendant. | |

The United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Kyle B. Martin, Assistant United States Attorney, hereby files its Sentencing Memorandum.

## I.
## **INTRODUCTION**

The United States requests that the Court sentence Angel Dominguez Ramirez, Jr. to the sentence recommended in the United States' Sentencing Summary Chart.

//
//

## II.

## STATEMENT OF THE CASE

On October 20, 2016, a warrant was issued in this district for Dominguez's arrest. On November 3, 2016, Dominguez was arrested near Queretero City, Mexico; he was detained by Mexican law enforcement at the request of U.S. law enforcement. On December 7, 2016, a provisional arrest warrant was served in Mexico upon the United States' request. On April 10, 2019, Dominguez was extradited to San Diego and made his initial appearance in this district. Although the provisional arrest warrant was not issued until approximately one month after his arrest, it is the United States' position that Dominguez was detained based on the charges in the instant case from November 3, 2016 until April 10, 2019, or 888 days. As of sentencing, Dominguez has also spent 1,148 days in custody in the United States; as such, Dominguez should be credited with 2,036 days of time served, or approximately 66 months and 29 days.[1]

On January 4, 2018, Dominguez was charged in a fourth superseding indictment with (1) conspiracy to distribute controlled substances outside the United States knowing it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960 and 963; (2) International Distribution of a controlled substance in violation of 21 U.S.C. §§ 959 and 960; and (3) conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i) and (h). on November 10, 2021 Dominguez entered a guilty plea to counts 1 and 6 of the fourth superseding indictment for (1) international conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 959, 960 and 963 and (2) conspiracy to launder monetary instruments in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i) and (h).

//
//
//

---

[1] According to BOP counsel, the Court can ensure that the defendant is credited with his time served in Mexico by specifying that should be the case in its Judgment.

# III.
# SUMMARY OF FACTS

Dominguez was the leader of a Mexico-based drug trafficking organization that stretched from South America to locations within the United States, including the Southern District of California, and included a vast network of transportation coordinators, money launderers, couriers, sources of supply and drug supply brokers. The organization was known as Satellite Group Elite 39, El Seg 39, or simply "the company." As the PSR notes, El Seg 39 was based on cooperative alliances with cartels such as the Beltran Leyva Organization, Cartel de Jalisco Nueva Generacion, the Sinaloa Cartel, Cartel Del Golfo, and Los Zetas. El Seg 39 gained much of its influence using *plato*, not *plomo* –contrary to many other Mexican drug-trafficking leaders, Dominguez preferred employing money and his own gravitas over using violence to achieve his aims.

In 2015, the Department of Homeland Security Investigations ("HSI") launched a thorough investigation of the organization. During the time frame when HSI was actively investigating, U.S. law enforcement and its international counterparts seized over 4,300 kilograms of cocaine and over $7 million. Law enforcement seized cocaine from the organization in Mexico; Costa Rica; Houston, Zapata and McAllen, Texas; and Chicago, Illinois. Probation's Pre-Sentence Report ("PSR") notes law enforcement estimates that at one time El Seg moved 10,000 kilograms of cocaine into the United States per month and transported at least $10,000,000 of drug proceeds back to Mexico.[2]

Dominguez was the unquestioned leader of El Seg 39. Wiretap evidence demonstrates that he controlled every aspect of his organization. Dominguez did rely on co-conspirators to negotiate and control drug routes, find sources of supply, and prevent law enforcement from thwarting his trafficking, but ultimately he gave the orders to each of these co-conspirators. In addition, to the extent El Seg 39 coordinated

---

[2] The numbers here are just estimates – law enforcement did not seize this amount of cocaine. The estimate is a projection based on intercepted messages that discuss drug quantities and cash movements.

3

with other high-level drug traffickers, Dominguez was the contact point for the organization.

## IV.

## **GUIDELINE CALCULATIONS**

The United States moves this Court to adopt the following Guidelines and sentencing calculations:

1. Base Offense Level [§ 2d1.1(c)(1)]     38
2. 1956 Conviction [§ 2S1.1(b)(2)(B)]     +2
3. Aggravated Role [§ 3B1.1(a)]     +4
4. Acceptance of Responsibility [§ 3E1.1]     -3
5. Appellate Waiver/Expeditious Resolution [§ 5K2.0]     -2

   Total Offense Level     39
   Criminal History Category     I
   Guideline Range     262-327

The United States and defendant agree on the above guidelines, though the defendant is entitled under the plea agreement to request further downward departures.

Dominguez agreed in his plea agreement that the conspiracy to which he pled guilty involved at least 450 kilograms of cocaine, so a base offense level of 38 is appropriate. Indeed, as noted above, HSI seized significantly more cocaine that can be tied to El Seg 39. Dominguez also pled guilty to a money laundering offense, so an upward departure of two levels is appropriate. As Dominguez concedes, he was "an organizer or leader of a criminal activity that involved five or more participants." And the evidence demonstrates that El Seg 39 employed workers throughout Mexico, the United States and Latin America. The agreed four-level upward departure is therefore appropriate. The United States agrees that Dominguez has accepted responsibility for his conduct and agreed in the plea agreement to seek a third point for acceptance. Dominguez likewise has waived appeal to the fullest extent permitted by law. A further downward departure is therefore appropriate.

4

As noted above, Dominguez is permitted to, and no doubt will, request further departures under the guidelines.

## V.

## **ANALYSIS**

A. Sentencing Factors

Title 18, United States Code, Section 3553 sets forth the factors the court must consider when fashioning a sentence. Several of these factors are discussed below.

> 1. The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The nature and circumstances of the offense, while aggravating, are largely taken into account by the recommended guideline calculations. Certainly, Dominguez committed a very serious offense – he agrees that he conspired to distribute at least 450 kilograms of cocaine. This is reflected in the Base Offense Level, which is among the highest levels in the entire sentencing guidelines manual. Dominguez was not the average drug trafficker – he was the leader of an organization that transported a great deal of cocaine. This is captured in the total six-level upward departure the government recommends under USSG §§ 2S1.1(b)(2)(B) and 3B1.1(a). It is also worth pointing out that due to Dominguez's leadership role, he is ineligible for a two-level downward departure for safety valve. Accordingly, Dominguez's role in the organization itself results in a six-level difference in adjusted offense level – in this case, that results in a guideline range that is 127 months higher at the low end. This adequately reflects Dominguez's leadership of the organization.

The history and characteristics of Dominguez himself are largely, though not wholly, mitigating. As the PSR notes, Dominguez is a dual United States/Mexico citizen and a United States Marine. Indeed, up until 1994, Dominguez lived an apparently exemplary life.[3] It appears that in 1994 Dominguez's life took a sharp turn when his two daughters were killed in an automobile accident – he turned to a life of drug trafficking, and in 1998

---

[3] Although much of this information is taken from the PSR, the United States' investigation has confirmed many of the circumstances of Dominguez's life that are summarized there.

5

he was convicted in U.S. District Court for the Southern District of Texas of Possession of Marijuana with Intent to Distribute under 21 U.S.C. § 841. Dominguez was sentenced to 30 months in custody for that offense.

The United States accepts the defense's representation that Dominguez has tremendous family support and has no reason to doubt the medical history provided in the PSR. The United States does note that according to paragraph 57 of the PSR, Dominguez has contracted Covid-19 three times while in custody and can confirm that Dominguez has other physical difficulties. Although the parties did not agree on a downward departure based on these health issues, the United States agrees that they should be considered as the Court weighs the § 3553 factors.

To summarize, Dominguez certainly has mitigating equities that the Court should consider.

### 2. Need to Reflect the Seriousness of the Offense

As discussed above, this is a serious offense, and the sentencing guidelines reflect that seriousness. The United States does not recommend any variances based on this factor.

### 3. Need to Deter Criminal Conduct and Protect Public from Defendant

The guidelines also adequately take this factor into account. The offense Dominguez committed is serious and must be deterred; however, Dominguez himself does not seem to be a higher recidivism risk than other defendants charged with similar offenses.

### 4. Need to Avoid Unwarranted Sentencing Disparities

Dominguez's co-defendants in this case have been sentenced to between 51 and 135 months in custody. Most recently, Mario Marrufo Mata, a Dominguez deputy, was sentenced to 90 months in custody. Dominguez's leadership enhancement accounts for a lion's share of the gap between the United States' recommendation for Dominguez and for his co-defendants.

B. Fine

Probation recommends that Dominguez pay a fine. The United States defers to the Court on that determination. The United States does note, however, that it has reviewed

6

documents associated with the property discussed in Paragraph 75 of the PSR, and believes that Dominguez no longer owns the property.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests the Court sentence Dominguez to a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2), as recommended in the United States' Sentencing Summary Chart and other sentencing filings.

DATED: May 24, 2022  Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

 *s/ Kyle Martin*
KYLE B. MARTIN
Assistant United States Attorney