NANCEE S. SCHWARTZ
Calif. Bar No. 107567
105 West "F" Street, Ste.208
San Diego, California 92101
Telephone No. (619) 232-5044
Facsimile No. (619) 233-3227
nanceesschwartz@gmail.com

Attorney for Defendant, Angel Dominguez-Ramirez

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA
# (HONORABLE WILLIAM Q. HAYES)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16cr1996-WQH |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v | |
| ANGEL DOMINGUEZ-RAMIREZ, | DATE: 31 May 2022 |
| Defendant. | TIME: 9:00 a.m. |

TO: RANDY GROSSMAN, UNITED STATES ATTORNEY AND KYLE MARTIN, ASSISTANT U.S. ATTORNEY:

Angel Dominguez-Ramirez, by and through his attorney, Nancee S. Schwartz, hereby submits this Sentencing Memorandum. This information is intended to provide information to enable a meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553.

## I
## INTRODUCTION

For as long as he can recall, Angel dreamed of being a Marine. He wanted to serve his country and upon graduation from high school, began that journey. Four years later, on a country road in North Carolina, that dream became a nightmare.

It was 1994. Sgt. Dominguez was stationed in North Carolina. Having just completed four years in the Marines, he was on a 6-month extension of service, awaiting re-enlistment. Once his re-enlistment was processed, he would begin Special Ops training for the U.S. Marine Corps. It had been his dream since moving

to the United States at 8 years old.

On November 29, 1994, Mr. Dominguez (corporal at the time) had finished work in the admin office, attended college classes and had picked up his two toddler daughters from his ex-wife. As a single dad with physical custody of his daughters, it was a schedule he was accustomed to. He would proceed home, prepare dinner, bathe his daughters and put them to sleep.

On this day however, on a back-road he drove often, he swerved to miss hitting a deer. He lost control of the car which flipped into water beneath the bridge. Someone in the woods heard the accident and called for help. Corporal Dominguez was able to free himself and pull his daughters from the vehicle. They were all rushed to the hospital where Dominguez was treated for serious, life threatening injuries. The last thing he remembers was asking for his daughters. When he awoke, a priest was beside him and he learned his daughters had not survived. They were 3 and 4 years old. The death of his daughters that day and his own serious medical injuries forever changed his life.

He accepts full responsibility for his criminal conduct as set forth in the plea agreement. He is disappointed in himself and very remorseful about his involvement and what led him to it. He has never made excuses for his behavior. He asks the court to sentence him to no more than 120 months in custody. For all the reasons set forth in this memorandum, this sentence is reasonable and well within this Court's discretion.

## II
## PRESENTENCE REPORT CORRECTIONS/CLARIFICATIONS

Pg. 5, Par. 8. Mr. Dominguez did not control Southwest Border plazas.

Pg. 5, Par. 9 and Pg. 18, Par. 102. There is no evidence in the investigation, discovery or elsewhere that 10,000 kilos of cocaine was transported monthly into the U.S. or elsewhere or that $10 million in proceeds were transported monthly back to Mexico. This is purely speculation from an unknown source.

Pg. 6, Par. 13. This paragraph has three errors: 1) The federal arrest warrant upon which Mr. Dominguez was arrested in Mexico, was issued in 2016, 2) The date of his arrest in Mexico (on this U.S. Warrant) was December 7, 2016 and 3) He remained in custody in Mexico until his extradition to San Diego on April 5, 2019, and has remained in custody since - thus having been continuously incarcerated on the U.S. Warrant since November 3, 2016.

Page 6, Par. 16. Mr. Dominguez returned to Mexico in 2007, not 1998.

Pg. 14, Par, 74. Mr. Dominguez' wife and children lived with him in Mexico. They now reside in Roma, TX and are supported by his wife with the assistance of her family.

Pg. 14, Par. 76. Mr. Dominguez' wife's monthly income is $1,600.

Pg. 15, Par. 77. Mr. Dominguez does not own a home in NY. The property was foreclosed on in April 25, 2007.

## III
## SENTENCING CONSIDERATIONS

**1) <u>The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant.</u>**

<u>The Offense Conduct</u>

The court is well aware of the facts of the case. The offense conduct is set forth in the plea agreement and presentence report. While this cases is serious it is not a RICO case nor a cartel case. There are no allegations of violence. The participants were all part of a drug trafficking organization that had many different factions. For his role, Mr. Dominguez has accepted responsibility as an organizer and accepts accountability for his role in this offense.

<u>History and Characteristics of Mr. Dominguez</u>

Mr. Dominguez-Ramirez was born in Puebla, Mexico. His mother, Hermelinda was a homemaker and his father, Angel, a chemical engineer. When Angel was 2 years old, his father was killed in an explosion at the refinery where he

worked. Although he was too young to remember his father, having lost him at such a young age had grave consequences in his life. His paternal grandparents tried to gain custody of Angel and his sister, causing his mother to move from Puebla. Using insurance money from his father's death, his mother moved north, eventually securing papers for herself, Angel and his sister to immigrate to the United States. Angel was 8 years old when they moved to Roma, TX where he resided through High School.

Angel loved school and was a good student. He was also a responsible young man who in many ways took on duties as his father's only son. He began working when he was about 13 years old, assisting with construction and carpentry work. He was paid $20.00 per week, which he gave to his mom to help with the family's expenses. He loved sports and in high school participated in baseball, boxing and track & field. He was also president of JTPA, a work-preparedness program and CO-OP program, earing him a college scholarship.

But Angel had a different dream. He wanted to serve his country. He married his high school girlfriend, and upon graduation enlisted in the United States Marine Corp. He was stationed in North Carolina and quickly began a family. He had 2 daughters, Sayra and Dianna. When his daughters were 3 and 4, he and his wife separated and Angel gained sole custody of his daughters.

Life as a single father, without family to help, was not easy. In addition to raising 2 toddlers, he was working in the admin department and taking college classes. Because he needed top security clearance for the work he was doing, he became a naturalized U.S. citizen. He served four years, and was on a 6-month extension waiting for his re-enlistment to begin. He had been accepted to train for "Special Ops" and was looking forward to a long career as a Marine.

The day of the accident altered his life in a devastating way. He lost the 2 things that meant the most; his daughters and his career in the Military.

Mr. Dominguez sustained serious injuries. As set forth in the PSR, he spent 6

months in the hospital, 30 days in ICU. He required approximately 20 surgeries to repair his foot and knees, requiring bone, muscle and skin grafting. He was released from the hospital with permanent disabilities resulting in a medical discharge from the Marines in October, 1995.

Upon his release from the hospital he returned to Roma, TX, to begin again. He remarried and began a family.

After months and months of rehab, he began looking for work but was limited by his injuries. He was in constant pain. He required a cane and could walk and stand for limited time only. Roma TX is a small border town and at the time, had limited employment opportunities. He couldn't find work and the VA provided no employment counseling or assistance. As he stated to Probation, after the death of his daughters, his life became "chaos." When he enlisted, the Marines became his family. He thought he could look to them for job re-training and other assistance. But no help was forthcoming. He felt abandoned by those around him.

His lack of employment weighed particularly heavy as he provided financial support to his mother and siblings. He had done so since he was 13 years old, and the inability to do so increased his lack of self-worth. Unable to secure any job, he agreed to deliver a load of marijuana after it was crossed from Mexico. He was 27 years old. He was arrested in Texas. He pleaded guilty and served 13 months in custody. That was in 1998 and was unrelated to the charges in the present case.

After he was released, he and his brother-in-law began a small construction company. They secured contracts for building senior housing. Angel found the jobs and negotiated contracts. He also assisted the architects with designs. The work was steady for years but when the housing market crashed, the work dried up and they closed the business.

Unable to find work in construction in Texas, he relocated his family to Mexico to work construction there with an cousin who was an architect. He was able to find work with his cousin and through other contractors he met. Like many living

in Mexico, he later met people who were involved in marijuana and cocaine smuggling. As reported by probation on pg 6 of the PSR, he became involved in the present case to financially support his family. He has expressed his remorse to his family and to probation. He can not undo his past. He has done everything possible to amend for his choices.

### Characteristics of Mr. Dominguez-Ramirez

No one would have thought, as they watched this proud young man graduate from boot camp, that he would ever be before this court. All he wanted was to be a Marine and serve his country. And he tried. But circumstances beyond his control, changed his journey. He has never made an excuse for the direction he took, only to say that after the accident, he stopped caring. He was numb. He didn't think or care about consequences because he had experienced the worst. He never sought counseling. He treated his pain with marijuana and alcohol and did whatever was necessary to support his new family as well as his mother and siblings. He thought about suicide but soon had a new wife and 3 daughters. Probation recommends that he be screened for the RDAP program, and he is anxious to do so.

He has never gotten past the loss of his two daughters, or the guilt he suffers. His faith in god brings him some peace but it is his three daughters who give him his strength. Their letters to the court describe an incredibly engaged, caring, loving and doting father whom the girls believe did his best to instill high moral values. He kept them entirely isolated from his illegal pursuits.

Angel wanted "out of the drug business" because his involvement took time away from his wife and children. Tears rolled down his cheeks when he told the probation officer that he would never forget his wife asking, "Have you ever thought about us?" He continued that it affected him greatly. He ended the interview saying he knows he cannot take back what he has done but can only do better going forward.

Aware of the U.S. warrant and prior to his arrest in Mexico, he had hired an attorney from Texas to arrange a self-surrender. Before such surrender could be

arranged, Mr. Dominguez was arrested in Mexico. He spent 2.5 years in solitary confinement awaiting extradition.

Mr. Dominguez has now been in custody for almost 6 years.  It has been particularly hard for him.  In addition to the time in solitary confinement in Mexico, almost 2 years of his time here was also in solitary confinement.  None of those placements have been punitive.  It has given him a lot of time to reflect on his past and to consider his future.  He has come to realize that appreciating what he has allows him to look beyond his loss.

He has a supportive family; a wife and 3 daughters who love him dearly.  His eldest daughter is expecting his first grandchild.  He is very close to his in-laws.  He has nieces and nephews that he has encouraged and supported.  Upon his release from custody he will return to them, although as reported to probation, as far away from his old life as possible.  His brother-in-law still works in construction and will assist Angel with employment upon his release.  He has rediscovered his love of learning and plans to take college business classes that will assist him finding work.

It's often difficult to provide the court with an accurate picture of a client.  Mr. Dominguez is so much more than what can be gleamed from the PSR or anything counsel can write.  He is not just a defendant standing before the court for sentencing.  He is a husband and father.  He is a veteran.  He is kind and caring.  While in custody he grew his hair and donated it to cancer patients.  He made sure that his family reached out to those without access to phones to call their loved ones and let them know they were ok.  He shared his commissary with those in need of necessities they couldn't purchase on there own.  The attached letter from Crispen Castro, a Sergeant at GEO, describes a man who treats everyone with respect.

Mr. Dominguez is human and like many of us, has made choices and done things that he is not proud of. But unlike some who find themselves in this situation, Mr. Dominguez does have a lot of good qualitites which  more accurately define him than do his misdeeds.

- 7 -

**2)** **The Need for Sentence Imposed and 3) Available sentence.**

A sentence of no more than 120 months will satisfy the need for just punishment. It is available to the court and reflects the seriousness of the offense and consideration of 3553 factors, which are compelling in this case.

**4)** **The Guideline Range.**

Base Offense Level. The plea agreement sets forth a base offense level 38 (2S1.1(a)(1)), a 2-level increase for drug proceeds (2S1.1(b)(2)(B)), a 4 level increase for aggravating role (3B1.1(B)), a 3-level decrease for acceptance of responsibility (3E1.1) and a 2 level decrease for Combination of Circumstances (5K2.0), resulting in an adjusted offense level 39.

Mr. Dominguez-Ramirez has no criminal history points, placing him in Criminal History Category I with a resulting guideline range of 262 - 327 months.

Pursuant to the plea agreement Mr. Dominguez-Ramirez is free to request any and all adjustments, departures, and variances.

It is respectfully submitted that a custodial sentence of not more that 120 months is appropriate.

**5)** **Sentencing Disparity**

The court should note that Mr. Dominguez's role increase alone sends his guidelines 125 months higher than they would otherwise be (not even considering that he would then qualify for safety valve). Mr. Dominguez does not dispute that his plea agreement was a bargained for exchange and that he agreed to a role increase, however, this court is free to consider whether or not it creates an unreasonable recommended guideline range. He is the only defendant, in an extensive investigation, whose role was increased. It is unrealistic to imagine that others in this case did not also exercise authority and control warranting a role increase.

Mr. Dominguez's base offense level (with offense conduct and role) is 43 with a resulting guideline range of life. Federal crimes resulting in that sentencing range are often much more serious and with greater victim impact. For example:

- First degree murder, level 43;
- Aircraft Piracy, resulting in death, level 43;
- Manuf, importing, exporting or trafficking in drugs, resulting in death with 1 or more similar priors, level 43;
- Aggravated Criminal Sexual Abuse of a child under 12, level 42;
- Sex trafficking of children under 12, level 42;
- Sexual exploitation of a minor under 12 by production of visual or printed material or Custodian permitting minor to engage in Sexually Explicit Conduct, and involves the commission of an aggravated sexual act, level 42;
- Child Exploitation Enterprises (aggravated acts & with parent) of child unger 12, level 41;
- Treason, level 43;
- Gathering and Transmitting National Defense Information to Aid a Foreign Government, if top secret, level 42;
- Unlawful Activity Involving Nuclear Material, Weapons, or Facilities, Biological Agents, Toxins, or Delivery Systems, Chemical Weapons, or Other Weapons of Mass Destruction; Attempt or Conspiracy, if the offense was committed with intent to injure the United States; or to aid a foreign nation or a foreign terrorist organization, level 42.

When comparing the above crimes, the most heinous and with the greatest victim impact, we submit that the base offence level applied to Mr. Dominguez creates a disparate sentence.

**6)** **Restitution**

Not applicable.

**7)** **Rehabilitation**

A custodial sentence in the resulting guideline range is not necessary as a means for rehabilitation.

## IV
## ADJUSTMENTS, DEPARTURES AND 3553 FACTORS

Mr. Dominguez-Ramirez' case involves a combination of factors that justify a departure or variance in this case. Those factors are set forth above, in the

presentence report and as follows:

<u>Appellate Waiver</u>.

Mr. Dominguez agreed to an unconditional waiver of all appellate rights.

<u>Personal Loss</u>

The death of his children, particularly in a no-fault accident where he was driving the vehicle, changed his life. It left him vulnerable to making choices without care of the consequences. Additionally, the loss of his father at such a young age left him without a male role model and as the only son, the responsibility to take on financial responsibility for his mother and siblings. This is not offered as an excuse for the offense but as a starting point for the journey that brought him here.

<u>Medical condition</u>.

In the interest of brevity, the PSR sets forth his medical conditions, all of which are impacted by a long custodial sentence. His age, along with his chronic pain and medical conditions, including physical disability, make serving a custodial sentence much more difficult and limit his ability to participate in most programs.

<u>Military service</u>

Mr. Dominguez served our country for five years. He chose service over college. After his accident, he wanted to remain in the Marines. He could have continued in some capacity but was forced to accept a medical discharge. Our courts recognize that military service can be a mitigating factor. This is especially important when considering that a significant event, not necessarily limited to combat, leaves lasting effects.

<u>Covid</u>

The pandemic that we continue to experience has become a collateral consequence of incarceration. Mr. Dominguez- Ramirez contracted covid three times while in custody. As set forth in the PSR, he continues to suffer residual effects of the virus.

In addition to the risk of outbreaks within the prison population, the time a

client serves now is different. Programs and classes are limited creating less productivity, allowing for less recreation and more time sitting in a cell. Also, due to restrictions on social visits, the time a client serves is all the more difficult. Clients look forward to family visits. Family visits allow a continued connection that is hard to maintain in a limited time phone call from custody, particularly with the noise and presence of other inmates. And, it is perhaps harder on family members who use the visits to see with their own eyes that their family member is well. The connection that is maintained by personal contact is an important factor for a defendant serving time and for the family left behind.

## V
## REASONABLENESS OF SENTENCE

When fashioning a sentence, the court must ask, "What is reasonable" based upon the whole of the case, including facts, client, and of course guidelines and 3553 criteria. The guideline range suggested here, for someone with limited criminal history who was involved long ago, creates a sentence beyond harsh. As set forth above, Federal crimes resulting in that sentencing range are often much more serious and with greater victim impact. Those more serious and heinous crimes arguably justify their ranges, but we submit the guideline range applied to Mr. Dominguez-Ramirez, by comparison, results in a sentence which is unreasonable and substantially beyond what is necessary to accomplish the goals and purposes of sentencing. Just because a chart assigns a number. doesn't make it reasonable. And, since the guidelines start so unreasonably high, even with variances and, or, adjustments, they remain unreasonably high at level 39. This is not to suggest that there are not victims in drug cases. But unlike other crimes, victims are not always innocent of culpability or intended for injury.

## IV
## CONCLUSION

While recognizing that one of the goals of sentencing is punishment, counsel

1  struggles with trying to pound a square peg into a round hole, unconvinced that every
2  sentence should be governed by, or the starting point be, a guideline range that on it's
3  own, may be unreasonable.
4      Mr. Dominguez-Ramirez did not seek out this life nor was he born into it.  A
5  tragedy led him to Mexico and a means to an end.  We submit that unusual
6  circumstances made him susceptible to his involvement in this case.
7      Every single day, Angel Dominguez-Ramirez is painfully aware of how others
8  lives have been forever altered by his actions.  His family is without a husband and
9  father. He is aware of the damage brought on by the flow of drugs into our country
10 and regrets contributing to that damage.
11     Drugs are a serious problem in our country but how much custody is necessary
12 for a 50 year old veteran who for years before his involvement was a contributing
13 member of society and his community?  A man who moved his family back to
14 Mexico for the possibility of earning a better living than he was able to earn in Roma,
15 TX after his medical discharge from the Marines. He didn't return with any thoughts
16 of becoming involved in drug trafficking.
17     We submit that a sentence of no more than 120 months (in consideration of all
18 information that becomes available to the Court before sentencing) will be sufficient,
19 but not greater than necessary to accomplish the goals and purposes of sentencing as
20 set forth in 18 USC § 3553.
21     It will promote respect for the law, reflect the seriousness of the offense, as
22 well as provide just punishment and deterrence.
23
24 DATED: 24 May 2022        Respectfully Submitted,
25                                                        s/NANCEE S. SCHWARTZ
26                                                      Nancee S. Schwartz, Attorney for
                                                     Defendant
27
28